IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RICK CRUZ-MANJARREZ | CV 04-1811 AS |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| CITY OF PORTLAND, OFFICER GORE, OFFICER PRESTON, OFFICER JONES, OFFICER POOL, OFFICER BAXTER, and DETECTIVE HALLIBURTON, | |
| Defendants. | |

ASHMANSKAS, Magistrate Judge:

## BACKGROUND

This is a civil rights action pursuant to 42 USC § 1983, in which Defendants' Motion for Summary Judgment (# 43) has been granted in part and denied in part (# 74). Defendants Gore and the City of Portland now renew their Motions for Summary Judgment and to Dismiss for Failure to State a Claim (# 76) on all remaining claims. Plaintiff, *pro se,* has not responded to Defendants' renewed motion. The applicable legal standards and findings of fact are set out in Findings and Recommendation of October 4, 2006 (# 70).

Page 1 - Findings and Recommendation

**DISCUSSION**

A. <u>Excessive Force and The Fourteenth Amendment</u>

Plaintiff alleges that defendants violated his federal constitutional rights by using excessive force, in the form of a police dog, resulting in an unreasonable seizure under the Fourth Amendment. Plaintiff claims that the use of the police dog constituted an assault and battery and the intentional infliction of emotional distress under state law.

Defendants' prior Motion for Summary Judgment (# 43) was denied in part based on this court's determination that the plaintiff's allegation that defendant Gore's use of a police dog during plaintiff's arrest might constitute the use of deadly force, requiring a different analysis than an allegation of simple excessive force, citing *Smith v. City of Hemet,* 394 F3d 689 (9th Cir 2005). The *Smith* court modified the definition of deadly force to include force likely to kill or to result in serious bodily injury. *Id.* at 705. The court stated:

> We need not here determine whether the use of a police dog to subdue a suspect constitutes deadly force generally or the circumstances under which such use might constitute such force. Having announced the definition of "deadly force" we leave to the district court the first opportunity to apply the concept to the facts of this case. We note only that while we have not in any of our prior cases found that the use of police dogs constituted deadly force, FN9 we have never stated that the use of such dogs cannot constitute such force. *Cf. Robinette v. Barnes,* 854 F.2d 909, 913 (6th Cir. 1988)(although failing to find that the police dog in that case constituted deadly force, the court stated that "an officer's intent in using a police dog, or the use of an improperly trained dog, could transform the use of the dog into deadly force"). *Compare Kuha* [*v. City of Minnetonka,* 365 F.3d 590 (8th Cir. 2004)] 365 F.3d at 598 n. 3 ("[T]he use of a properly trained police dog in the course of apprehending a suspect does not constitute deadly force").

*Id.* at 707. Accordingly, the Ninth Circuit interpreted *Graham v. Connor*, 490 US 386 (1989) as

Page 2 – Findings and Recommendation

applicable to excessive force analyses and *Tennessee v. Garner,* 471 US 1 (1985) as applicable to excessive deadly force analyses.

However, the Supreme Court rejected this distinction in *Scott v. Harris,* 550 US __, 127 SCt 1769, 2007 WL 1237851 (April 30, 2007). The issue in *Scott* was whether a police officer was entitled to qualified immunity from suit under 42 USC § 1983 on a claim of excessive use of deadly force. The claim arose from the officer's attempt to stop a fleeing suspect in a high-speed car chase by intentionally bumping the suspect's vehicle from behind, causing the suspect to lose control of the car and crash. As a result of the crash, the suspect was severely injured. The offense that precipitated the chase was a minor speeding offense.

The *Scott* defendant moved for summary judgment based on an assertion of qualified immunity. The District Court denied the motion, finding material issues of fact on which the issue of qualified immunity turned. The Court of Appeals affirmed on interlocutory appeal, concluding that the officer's actions could constitute deadly force under *Tennessee v. Garner,* 471 US 1 (1985) and that the use of such force would violate the plaintiff's right to be free from excessive force during a seizure. The Court of Appeals concluded that a reasonable jury could find that the defendant officer had violated plaintiff's Fourth Amendment rights. The Court of Appeals further concluded that the law was sufficiently clear to give reasonable law enforcement officers notice that ramming a vehicle under the circumstances was unlawful and that therefore the officer defendant was not entitled to qualified immunity.

The Supreme Court reversed. It stated that in resolving questions of qualified immunity, courts are required to resolve a "'threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

Page 3 – Findings and Recommendation

right?  This must be the initial inquiry.'"  *Scott*, 127 SCt at 1774 *quoting Saucier v. Katz,* 533 US 194 (2001).

The Court expressly rejected the argument that the *Garner* analysis applied, stating:

> ...*Garner* did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute "deadly force."  *Garner* was simply an application of the Fourth Amendment's "reasonableness" test, [citation omitted] to the use of a particular type of force in a particular situation.  *Garner* held that it was unreasonable to kill a "young, slight, and unarmed" burglary suspect [citation omitted] by shooting him "in the back of the head" while he was running away on foot [citation omitted] and when the officer "could not reasonably have believed that [the suspect]...posed any threat," and "never attempted to justify his actions on any basis other than the need to prevent an escape," [citation omitted].  Whatever *Garner* said about the factors that *might have* justified shooting the suspect in that case, such "preconditions" have scant applicability to this case, which has vastly different facts. *"Garner* had nothing to do with one car striking another or even with car chases in general...A police car's bumping a fleeing car is, in fact, not much like a policeman's shooting a gun so as to hit a person." [Citation omitted].  Nor is the threat posed by the flight on foot of an unarmed suspect even remotely comparable to the extreme danger to human life posed by respondent in this case.  Although respondent's attempt to craft an easy-to-apply legal test in the Fourth Amendment context is admirable, in the end we must still slosh our way through the factbound morass of "reasonableness."  Whether or not Scott's actions constituted application of "deadly force," all that matters is whether Scott's actions were reasonable.

*Scott,* 127 SCt at 1777-78.  The Court reiterated that, in order to assess "reasonableness," a court "'must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Id.* quoting *United States v. Place*, 462 US 696, 703 (1983).  The Ninth Circuit has articulated this assessment to require the court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against "the countervailing government interests at

Page 4 – Findings and Recommendation

stake." *Miller v. Clark Co.,* 340 F3d 959, 964 (9th Cir 2003)(quoting *Graham v. Connor,* 490 US 386, 396 (1989)).  This is the analysis undertaken in the Findings and Recommendation of October 4, 2006, at pages 9-11 (# 70).

Assuming, without deciding, that Officer Gore's decision to command the police dog to bite plaintiff constituted the use of deadly force, the use of that force was reasonable under the circumstances.  Using the analyses set out in *Graham, Garner, Smith* or *Scott,* a police officer's use of a police dog at night, in the dark, in a residential neighborhood, to restrain a hidden, possibly armed robbery suspect, when that suspect has fled after commands to halt, and refused vocal commands to surrender and/or to show his hands, is reasonable, and does not violate the Fourth Amendment protection from excessive force.  Defendant Gore's renewed Motion for Summary Judgment for claims of excessive force related to the use of the police dog should be granted.

B.  State Law Claims

The undisputed material facts establish that the use of the police dog to restrain the plaintiff was reasonable.  Under Oregon law, an officer acting in the course of his official duty cannot be held liable for assault and battery unless the officer uses excessive force.  *Gigler v. Klamath Falls,* 21 Or App 753 (1975), *reconsideration denied* 1975 *review denied* 1975.

In addition, to the extent that plaintiff's claim for the Intentional Infliction of Emotional Distress arises out of the use of the police dog, it fails to state a claim because the evidence establishes that the use of the police dog was reasonable under the circumstances.  If no reasonable juror could differ on the issue of whether defendants' conduct was extreme and outrageous, the court may decide the issue.  *Pakos v. Clark,* 253 Or 113, 132 (1969).

Page 5 – Findings and Recommendation

Accordingly, Defendants' Motion to Dismiss for Failure to State a Claim should be granted as to those portions of the state law claims arising from the allegation that the use of the police dog constituted excessive force.

## RECOMMENDATION

For the reasons set forth above, defendants' renewed Motion for Summary Judgment and To Dismiss (# 76) should be granted as to all remaining claims and this case should be dismissed.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due August 10, 2007. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due August 24, 2007, and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 27th day of July 2007.

        /s/Donald C. Ashmanskas
        DONALD C. ASHMANSKAS
        United States Magistrate Judge